Filed 1/6/15  P. v. Lal CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>ASHISH KUMAR LAL,<br><br>　　Defendant and Appellant. | H039704<br>(Santa Clara County<br>　Super. Ct. Nos. C1110645, C1229931) |

## I.  INTRODUCTION

In case No. C1110645, defendant Ashish Kumar Lal was convicted after jury trial on March 20, 2013, of second degree robbery (Pen. Code, § 211, 212.5, subd. (c)).[1]  The jury found true the allegation that defendant personally used a deadly and dangerous weapon, a stick, during the commission of the robbery (§ 12022, subd. (b)(1)).  The trial court found true the allegations that defendant had a prior serious felony conviction and a prior strike (§§ 667, subds. (a), (b)-(i), 1170.12), and that he had served a prior prison term (§ 667.5, subd. (a)).

In case No. C1229931, defendant pleaded no contest on March 21, 2013, to driving with a blood alcohol content of 0.08 percent or more causing injury (Veh. Code, § 23153, subd. (b)).  Defendant also admitted that he personally inflicted great bodily

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

injury on the victim (§ 12022.7, subd. (a)), that he was out of custody on bail at the time (§ 12022.1), that he suffered a prior strike (§§ 667, subds. (b)-(i), 1170.12), and that he had served a prior prison term (§ 667.5, subd. (b)).

The trial court sentenced defendant in both cases to a total prison term of 16 years four months.

On appeal, defendant does not raise any issues in the Vehicle Code case (No. C1229931). In the robbery case (No. C1110645), defendant contends that (1) the trial court erred in admitting testimony regarding two photograph identifications by the police, (2) the prosecutor committed misconduct in argument to the jury, (3) the court erred by failing to instruct the jury to view defendant's out-of-court statements with caution pursuant to CALCRIM No. 358 and by failing to give a corpus delicti instruction pursuant to CALCRIM No. 359, (4) the court erred by instructing the jury that it could use evidence of defendant's flight to show his consciousness of guilt (CALCRIM No. 372), (5) the court erred by giving flawed instructions on reasonable doubt and the evidence, (6) the cumulative effect of the errors requires reversal, and (7) a clerical error in the abstract of judgment should be corrected.

For reasons that we will explain, we will affirm the judgment but order the clerical error in the abstract of judgment corrected.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Information (No. C1110645)*

Defendant was charged by information with second degree robbery (§§ 211, 212.5, subd. (c)). The information further alleged that defendant personally used a deadly and dangerous weapon, a stick, during the commission of the offense (§ 12022, subd. (b)(1)), that he had a prior serious felony conviction and a prior strike (§§ 667, subds. (a), (b)-(i), 1170.12), and that he had served a prior prison term (§ 667.5, subd. (a)). The court granted defendant's request to bifurcate trial on the prior allegations, and defendant waived his right to a jury trial on the prior allegations.

2

**B.** *The Prosecution's Case*

### 1. The robbery

A liquor store owned by a husband and wife was robbed on the morning of March 6, 2010. The couple had purchased the store in 2009, and ultimately sold the store in December 2010.

The wife, Kamal Chauhan, testified that on the morning of the robbery, she opened the store about 9:00 a.m. She was working by herself, and there were not a lot of people coming into the store. Around 10:30 a.m., a man came into the store and asked if Chauhan sold glass pipes. Chauhan testified that the man also picked up a package about the size of ChapStick or Binaca package and then put it back. He remained in the store briefly before leaving.

About half an hour later, Chauhan went outside and saw the same man approach the store. She followed him into the store. The man stated that he forgot cigarettes. Chauhan went behind the counter where the cigarettes were located. The man "roam[ed]" around the store and then asked for a particular type of Snapple. Chauhan went to look for it but could not find it. As Chauhan walked behind the counter again, the man followed her. As soon as she turned around, she saw the man holding up a "sturdy" stick about two to three feet long and "maybe double" the thickness of a broomstick. He stated that he would not hurt her and asked her to open the register. Chauhan was scared. She complied, and the man took all the bills out of the register. Chauhan testified that the amount taken could have been up to $1,000. The man subsequently walked out of the store, crossed the parking lot, and jumped over a fence.

Chauhan pressed a panic button to notify the police and went next door to call 911. As the call was being made, Chauhan could still see the man crossing the parking lot.

### 2. The investigation by the police

The police arrived at the liquor store within 10 minutes of Chauhan's call. The police asked Chauhan whether the man had touched anything. San Jose Police Officers

3

Michelle Hinch and Brad Quick, who were dispatched to the scene, testified that Chauhan pointed to a package of Binaca. Officer Quick lifted fingerprints from it.

Kimberly Smith, a senior latent fingerprint examiner for the San Jose Police Department, examined the fingerprint. She also testified at trial as an expert in fingerprint comparison. Smith considered one fingerprint obtained by Officer Quick to be a "very good quality latent print." Smith compared the latent print with fingerprints in a law enforcement computer system. After receiving a possible match through the computer system with defendant's fingerprint, Smith conducted a manual comparison of the latent print with defendant's exemplar fingerprint, which was from a fingerprint card maintained in a law enforcement database. Smith matched 16 points of identification on the latent print with the exemplar and determined that the overall quality of agreement between the points of identification was "excellent." Smith concluded that the latent print, which was taken by Officer Quick, was from the same person as the exemplar print, which was from a fingerprint card for defendant. Subsequent to this identification, Smith compared the exemplar prints with prints from another fingerprint card of defendant's and determined that the prints belonged to the same person.

The police collected surveillance video from the liquor store. Surveillance video from two cameras located in different locations of the store was shown at trial. Stills from the surveillance video were also introduced into evidence. Chauhan testified that the two people in the video were her and the robber. The video and stills reflect the events that occurred during the second time the robber entered the store. In the video and stills, the robber is wearing a white hooded sweatshirt with the hood over his head. The robber's sweatshirt is completely open in the front and reveals that he is wearing a black T-shirt underneath with a white design in the center of the chest. The video shows the robber moving about the store and eventually behind the counter where Chauhan is located. At that point, the robber is holding a stick in front of him and is within arms-length of Chauhan just before he takes money out of the register.

4

Defendant was 25 years old at the time of the robbery and he is "Asian Indian." Chauhan reported to Officer Hinch that she did not know the robber, that the robber was between 25 and 30 years old, around five feet eight inches to five feet nine inches tall, with dark eyes and a medium complexion.

Chauhan testified that she is of Indian descent but that she has been mistaken for another ethnicity "all the time." In particular, she has been mistaken for being "Mexican, Hispanic, a mix," and people have spoken to her in Spanish. She was asked by numerous police officers about the ethnicity of the robber. She testified that she told them the robber looked like a "mixture," "between Hispanic to half Black." At trial, she explained that the robber had his head covered and that that was her "best guess." Officer Hinch testified that Chauhan had reported the robber as being Hispanic.

Brian Meeker was assigned, while he was a detective in the San Jose Police Department's robbery unit, to investigate the case on July 5, 2011, more than a year after the robbery, following a "fingerprint hit" from a package of Binaca that had been taken from the scene. The report indicated that the fingerprint belonged to defendant. Detective Meeker explained that "[f]requently . . . it takes a considerable amount of time to get certain tests and certain reports back" and that was "why there was a delay in time." Detective Meeker reviewed surveillance video from the store and photographs taken from the video, and compared them to photographs of defendant taken from law enforcement databases. Detective Meeker testified that "[t]hey appeared to be the same person," in reference to the photographs of defendant from law enforcement databases and the person in the surveillance video and stills. Based upon this comparison, the detective created a six-photo lineup that included defendant's photograph.

Detective Meeker also interviewed Chauhan on July 5, 2011, who reported that the robber was dark-skinned. According to the detective, Chauhan referred to the racial makeup of the robber as "something different." She further stated that the robber was not

"full" Hispanic or "full" Black, that he might have been "Puerto Rican or something else," and that she could not be sure.

On July 5, 2011, Chauhan was shown the six-photo lineup, one photograph at a time, by San Jose Police Detective Brian McDonald. In order to avoid bias in the presentation of the photographs, Detective McDonald did not know who the "target" person was in the photo lineup. At trial, Chauhan believed Officer Meeker had shown her the photographs.

Before Chauhan was shown the photo lineup, Detective McDonald admonished her that "[t]he person involved in this investigation may or may not be shown" and that "[r]egardless of the results, the investigation will continue." Chauhan looked at the photo lineup three times on a single occasion. The first time, she paused on photograph number two, which was a photograph of defendant, and stated that the person looked like the robber based on the skin tone. In viewing the lineup a second time, Chauhan again paused on photograph number two. She stated that the skin tone and the eyes looked similar to the robber. She also indicated that the people in the other five photographs were not the robber. The third time in viewing the lineup, Chauhan again paused on photograph number two. She stated that the skin tone, the mouth, and the eyes looked similar to the robber's. However, she also stated that she "couldn't be 100 percent sure it was him, because she didn't want an innocent person going to jail." Chauhan further stated that the people in the remaining photographs did not match the robber. Chauhan circled and initialed photograph number two. Chauhan told Detective McDonald that the person in photograph number two looked similar to the robber. According to the detective's report, Chauhan also told him that the robbery had occurred at night.

Chauhan testified at defendant's preliminary examination on March 15, 2012 that defendant's picture "looked the closest to the robber." She testified that she was shown the photo lineup in October 2011. Chauhan was not asked to make an identification at the preliminary examination.

At trial in March 2013, Chauhan explained that "out of all of the pictures that were shown" to her, the person in the photograph she circled "looked the closest to the person that came into the store." She later testified that the person in the photo "possibly could be" the robber.

Chauhan last saw defendant in court on March 15, 2012, which was the date of his preliminary examination. At trial, Chauhan was asked with respect to the photo lineup whether she saw "any of the other five individuals in the courtroom" when she last saw defendant. She initially testified at trial that "it could be" that she saw "any of the other five" people. She subsequently testified at trial that she did not see any of those five individuals from the photo lineup in the courtroom on March 15. She eventually indicated that she was confused by the questions.

A few days after the robbery, Chauhan told the police that she saw a person who could have looked like the robber, and that the person was named Casimiro or something similar to that name. At trial, Chauhan explained that Casimiro used to cash checks at the store and that she did not believe he was the robber.

At trial, Chauhan identified defendant as the robber.

On July 7, 2011, Detective Meeker met with defendant and searched his belongings. Defendant had a Costco card in his wallet with his picture on it but with another person's name. Detective Meeker testified that in the Costco picture, defendant appeared to be wearing "the exact same thing" as in the video of the robbery: a "zip-up type" white hooded sweatshirt and a black T-shirt with a logo consistent with a "Dickey's" logo. The Costco card was introduced into evidence and further reflected that defendant, like the robber, had the sweatshirt hood over his head. Detective Meeker testified that, based on his "training and experience and expertise," the person in the photograph on the Costco card and the person in the surveillance video "were one and the same people."

7

**C. *The Defense Case***

San Jose Police Detective William Young interviewed Chauhan about the robbery. Subsequently, on March 10, 2010, four days after the robbery, Chauhan called Detective Young and told him that a person who had entered the store might be a relative of the robber. Chauhan indicated that the person's face looked similar to the robber but that the person was too tall to be the robber. Chauhan stated that the person's last name was similar to "Cazmiro." Detective Young entered the name into a database containing mug shots from Santa Clara County but did not find a match.

Detective Young conducted additional searches on the database, including searches with different spellings of the name, and eventually generated a list of several people with the first name of "Casimiro." Detective Young narrowed down that list based on whether the person was similar in age and other characteristics to the robbery suspect, and whether the person lived near the liquor store. One police report identified the suspect as Hispanic. From the list he had generated, Detective Young identified two Hispanic males who lived near the liquor store, but he ultimately concluded that one was too tall and that the other one did not look like the suspect in the surveillance video. Detective Young testified that he did not know whether Chauhan was talking about either of these males.

Defendant did not testify at trial. The trial court granted defense counsel's request to have defendant stand and face the jury before the defense rested.

**D. *The Verdict, Finding on the Prior, and Sentencing***

On March 20, 2013, the jury found defendant guilty of second degree robbery and found true the allegation that he personally used a deadly and dangerous weapon, a stick, within the meaning of section 12022, subdivision (b)(1).

On March 21, 2013, the trial court found all prior allegations to be true. (§§ 667, subds. (a), (b)-(i), 1170.12, 667.5, subd. (a).)

Sentencing in the robbery case, and in the separate case involving a Vehicle Code violation, was conducted at a single hearing on May 6, 2013.  In the robbery case, the trial court sentenced defendant to 12 years in prison.  The sentence consists of six years (the midterm doubled), plus one year for the weapon enhancement (§ 12022, subd. (b)(1)) and five years for the prior serious felony enhancement (§ 667, subd. (a)).  The court stayed the three-year punishment for the prison prior enhancement (§ 667.5, subd. (a)).  The abstract of judgment refers to the three-year prison prior enhancement as "PC667.5(a) x 3" and reflects that it was "S[tayed]."  In the Vehicle Code case, the trial court sentenced defendant to four years four months consecutive to the sentence in the robbery case, for a total prison term of 16 years four months.

### III.  DISCUSSION

#### A.  *Police Testimony Regarding Photograph Identifications*

Defendant contends the trial court erred in admitting testimony by Detective Meeker regarding two photograph identifications by the detective.  First, Detective Meeker testified that "[t]hey appeared to be the same person," in reference to the photographs of defendant from law enforcement databases and the person in the surveillance video and stills.  Second, the detective testified that, based on his "training and experience and expertise," the person in the photograph on the Costco card and the person in the surveillance video "were one and the same people."  According to defendant, the error was prejudicial under state law and violated his state and federal constitutional rights to due process, a fair trial, and a jury determination on the issue of identity.  Defendant further contends that his claim was preserved for appeal and that, to the extent it was not, his trial counsel rendered ineffective assistance of counsel.

The Attorney General concedes that Detective Meeker was not qualified as an expert on photographic identification, and that it would not be permissible for Detective Meeker to offer lay opinion concerning the identity of the robber portrayed in the surveillance video or stills.  The Attorney General contends, however, that Detective

9

Meeker "did not definitively identify [defendant] as the robber, but simply testified that the photograph he obtained of [defendant] 'appeared to be the same person' depicted in the video." Further, the testimony was for the nonhearsay purpose of explaining how the detective created the photo lineup. As to the other challenged testimony that the person in the Costco card photograph and in the surveillance video were "one and the same," the Attorney General contends that defendant has forfeited his claim on appeal by failing to object below. As to both sets of challenged testimony, the Attorney General contends that any error in admitting the testimony was harmless.

### 1. Background

Detective Meeker testified that he was assigned to investigate the robbery based on a fingerprint hit. Defense counsel asked to approach the bench at that point and a sidebar discussion was held. Defense counsel explained: "I'm going to start placing objections as to hearsay because I'm certain that [the prosecutor] can say these are not offered to prove the truth of the matter, but simply as foundation. [¶] He's going to review reports. He's going to say something like a fingerprint was identified as belonging to [defendant]. But I'm going to place the objection because I want to make sure that that's simply not offered to prove the truth of the subject . . . ." The trial court indicated that it understood defense counsel's position.

The prosecutor resumed the direct examination of Detective Meeker on the issue of the fingerprint hit. When the prosecutor asked him about "a fingerprint hit from a package of Binaca that had been taken from the scene," defense counsel objected on hearsay grounds and asked that the exception to the hearsay rule be stated. The prosecutor responded that "this portion of the testimony is not being offered for the truth of the matter, but simply how the officer ended up investigating the case." The trial court overruled the objection. The court also gave a limiting instruction that the testimony was not being offered for the truth of the matter, but to "explain his conduct, what he did based on that information that he received." Detective Meeker proceeded to testify that

10

the police investigation was opened because of the report regarding the fingerprint hit on the Binaca.

After a few more questions, Detective Meeker indicated that, as part of his investigation, he compared the surveillance video and stills to photographs of defendant from law enforcement databases. The prosecutor asked whether "the photographs match the video." Detective Meeker responded, "*They appeared to be the same person.*" (Italics added.) Defense counsel objected and asked that the testimony be stricken, on the ground that it was a "statement of opinion" and there was "no foundation that this witness is qualified to make that determination." Defense counsel further stated, "That's one of the facts that this jury is going to decide, and not for the police officer to make that decision." The trial court overruled the objection.

On direct examination and on cross-examination, Detective Meeker testified that the white hooded sweatshirt and the "Dickey's" T-shirt in the picture on the Costco card "appear[ed]" to be the exact same clothing worn by the robber in the surveillance video.

Near the end of redirect examination, the prosecutor referred to this testimony and asked Detective Meeker, "The person in the picture, the person in the Costco card, in evaluating that versus the video, is that the same person?" The detective responded, "Yes." Defense counsel objected on the grounds that the question had been asked and answered, and that "this is a statement of ultimate fact and this witness is not qualified to make that, that is within the purview of the jury." The trial court ruled: "I agree with that. . . . [T]his question this witness answered several times that it appears to be the same. This last answer was definite. So I'll sustain the objection." In response to defense counsel's request, the court struck the testimony and asked whether the prosecutor wanted to rephrase the question. The prosecutor asked the detective, "Did it appear to be the same person in the Costco card to the video?" Detective Meeker responded, without objection, "*Based on my training and experience and expertise, they were one and the same people.*" (Italics added.)

11

In argument to the jury, the prosecutor contended that the elements of robbery were readily established and that the only issue before the jury was whether defendant was the robber. The prosecutor repeatedly referred to Detective Meeker's testimony as one of the pieces of evidence establishing that defendant was the robber. The other evidence that the prosecutor referred to included the surveillance video, defendant's fingerprints on the Binaca, Chauhan's identification of defendant in the photo lineup, the Costco card in defendant's wallet containing a photo of defendant in the same clothes as the robber in the surveillance video, and Chauhan's unequivocal identification of defendant in court.

### 2. Analysis

"It is now clearly established that lay opinion testimony concerning the identity of a robber portrayed in a surveillance camera photo of a robbery is admissible where the witness has personal knowledge of the defendant's appearance at or before the time the photo was taken and his testimony aids the trier of fact in determining the crucial identity issue. [Citations.] Where the photo is unclear, or the defendant's appearance has changed between the time the crime occurred and the time of trial, or where for any reason the surveillance photo is not conclusive on the identity issue, the opinion testimony of those persons having knowledge based upon their own perceptions (Evid. Code, § 800, subd. (a)) of defendant's appearance at or before the time the crime occurred is admissible on the issue of identity, and such evidence does not usurp or improperly invade the province of the trier of fact. [Citations.]" (*People v. Ingle* (1986) 178 Cal.App.3d 505, 513.)

In this case, there is no evidence that Detective Meeker had personal knowledge of defendant's appearance at or before the time the robbery occurred. Further, he was not qualified as an expert on photographic identification. At a minimum, therefore, his latter testimony definitively identifying the person in the Costco photograph and in the video as

12

being "one and the same" was inadmissible. Defendant did not, however, object at trial to this latter testimony. (See Evid. Code § 353.)

As we will next explain, we determine that defendant was not prejudiced by the admission of both points of testimony by Detective Meeker. In view of that determination, we do not address whether the first point of testimony by Detective Meeker, that "[t]hey appeared to be the same person" in reference to the photographs of defendant from law enforcement databases and the person in the surveillance video and stills, was a definitive identification or whether it was admitted for a nonhearsay purpose. For the same reason, we also do not address whether defendant forfeited his claim with respect to the second point of testimony that, based on his "training and experience and expertise," the person in the photograph on the Costco card and the person in the surveillance video "were one and the same people."

The prosecutor and defense counsel argued to the jury that the evidence readily established that Chauhan had been robbed, and that the only issue to be decided was whether defendant was the robber. We determine that the evidence concerning the robber's identity was very strong. Chauhan testified that the robber had touched a package of Binaca or ChapStick, and Officers Hinch and Quick testified that Chauhan had pointed to a Binaca package at the scene. The testimony by Officer Quick who lifted fingerprints from the package, the testimony by the fingerprint expert Smith who analyzed a print from the package, and the exhibits related to their testimony established that the fingerprint belonged to defendant. Further supporting the conclusion that defendant was the robber was the evidence that defendant appeared to be wearing the same clothes in the same manner in his Costco photograph as the robber in the surveillance video – a black T-shirt with a white design in the center of the chest and a white sweatshirt with the front open and the hood on. The fingerprint evidence and the Costco card established that defendant was the robber.

As a result, we determine that any error in admitting the challenged testimony by Detective Meeker was harmless under any standard of review. (See *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*); *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) Thus, even assuming that trial counsel should have objected to Detective Meeker's testimony on the second point or requested that the testimony be stricken, there is no reasonable probability that defendant would have obtained a more favorable result. Defendant thus fails to establish that his trial counsel was ineffective. (See *People v. Anderson* (2001) 25 Cal.4th 543, 569 (*Anderson*); see also *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694.)

## B. *Prosecutorial Misconduct in Argument to the Jury*

Defendant contends that the prosecutor committed prejudicial misconduct or error by referring to facts not in evidence and improperly appealing to the jury's sympathy in argument to the jury. Defendant contends that he was denied due process, a fair trial, and his rights of confrontation and cross-examination as a result. Defendant further contends that no objection or request for an admonition below was necessary to preserve his claim and, to the extent an objection or request for an admonition was necessary, his trial counsel rendered ineffective assistance.

The Attorney General contends that defendant has forfeited his claim by failing to object and request an admonition below, that the prosecutor did not commit misconduct, that defendant was not prejudiced, and that his ineffective assistance of counsel claim fails.

### 1. Background

In argument to the jury after the close of evidence, the prosecutor provided a chronology of events during the robbery. The prosecutor then stated: "*Ms. Chauhan is left scared. She's left helpless, she's left victimized. This is not just a place where she works, this is her business, this is her life blood.* [¶] *It is now your job to give Ms. Chauhan justice, to give her the justice for the crime that was committed against her*.

14

[¶] How do you do that? Well, the People have to prove that, as the judge just read, five elements of robbery." (Italics added.) The prosecutor proceeded to discuss the elements of robbery and the relevant evidence. The prosecutor then focused on the "real issue" in the case, which was whether defendant was the robber, and the evidence relevant to the issue.

The prosecutor ended his opening argument by stating: "The physical evidence cannot change. The physical evidence cannot misidentify. The video cannot alter. The fingerprints doesn't change, they just are. [¶] Witness testimony can change, but again the witness' testimony is corroborated by this unchanging physical evidence, this unchanging circumstantial evidence that the defendant is guilty. *I would ask that you go back and you give Ms. Chauhan the justice she deserves*. She was a victim in this robbery. *She was scared. They ended up selling the store. This is something that she deserves, she deserves justice.* [¶] And I would ask that you go back and find the defendant guilty of the charge and find the allegations true. Thank you." (Italics added.)

Defense counsel did not object to these portions of the prosecutor's argument. Instead, in argument to the jury, defense counsel stated: "So what I'm going to ask you to do is to be critical. Critique the evidence. Critique what we say. And remember what the evidence was. [¶] [The prosecutor] opened his argument by asking you to give justice to Kamal Chauhan. He closed his argument by asking you to give justice to Ms. Chauhan. [¶] You're told by the judge, you're not to decide this case by sympathy or prejudice or bias. You're not to give justice to a person who was robbed, the judge never told you that. You're here to decide whether [defendant] is guilty or not. To appeal to you to give justice to somebody who is robbed is asking you to exercise sympathy, and you can't. You cannot do that. I'm sorry Ms. Chauhan was robbed, but it has nothing to do with this case. I'm sure you feel sorry she was robbed, it has nothing to do with this case. [¶] [The prosecutor] told you that she sold this liquor store because of the robbery, there is no evidence of that. Again, it is an appeal to you to avoid being

15

critical of the evidence, but let's feel sorry for her because she had to sell the liquor store. That's not true. It's not evidence and it's not relevant. [¶] So be real cautious as we go through this case that each of you must come to your own conclusion. . . . [¶] You do your job. You do your duty. Remember we talked about raising your hand and promising to do your duty. You do your duty when you decide the case solely upon the evidence and not rely upon sympathy, feeling sorry for somebody." Defense counsel proceeded to present the defense's view of the case.

## 2. Analysis

As the California Supreme Court explained in *People v. Hill* (1998) 17 Cal.4th 800 (*Hill*), it is misconduct for a prosecutor to argue facts not in evidence "because such statements 'tend[ ] to make the prosecutor his [or her] own witness—offering unsworn testimony not subject to cross-examination. It has been recognized that such testimony, "although worthless as a matter of law, can be 'dynamite' to the jury because of the special regard the jury has for the prosecutor, thereby effectively circumventing the rules of evidence." [Citations.]' [Citations.] 'Statements of supposed facts not in evidence . . . are a highly prejudicial form of misconduct, and a frequent basis for reversal.' " (*Id.* at p. 828.) Also, "an appeal to the jury to view the crime through the eyes of the victim is misconduct at the guilt phase of trial; an appeal for sympathy for the victim is out of place during an objective determination of guilt. [Citations.]" (*People v. Stansbury* (1993) 4 Cal.4th 1017, 1057, reversed on other grounds by *Stansbury v. California* (1994) 511 U.S. 318.)

" ' "A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.] In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.] A prosecutor's misconduct that does not render a trial fundamentally unfair nevertheless violates California law if it involves 'the use of deceptive or reprehensible

16

methods to attempt to persuade either the court or the jury.' [Citations.]" ' [Citation.] '. . . Also, a claim of prosecutorial misconduct is not preserved for appeal if defendant fails to object and seek an admonition if an objection and jury admonition would have cured the injury. [Citation.]' [Citation.]" (*People v. Tully* (2012) 54 Cal.4th 952, 1009-1010, fn. omitted (*Tully*).)

We determine that defendant fails to establish a basis for reversal based on the prosecutor's argument to the jury.

First, defendant failed to object to the prosecutor's comments and seek an admonition from the trial court. Thus, defendant's claim of prosecutorial misconduct is not preserved for appeal if a " 'jury admonition would have cured the injury. [Citation.]' [Citation.]" (*Tully, supra,* 54 Cal.4th at p. 1010.) Defendant contends that the prosecutor's "persistent misconduct [was] incurably prejudicial." We are not persuaded that the two challenged portions of the prosecutor's argument, as quoted in italics above, constitute persistent misconduct in this case, or that an admonition would not have cured any purported harm caused by the prosecutor's argument. "A jury will generally be presumed to have followed an admonition to disregard improper evidence or comments, as '[i]t is only in the exceptional case that "the improper subject matter is of such a character that its effect . . . cannot be removed by the court's admonitions." [Citation.]' [Citation.]" (*People v. Pitts* (1990) 223 Cal.App.3d 606, 692; see *People v. Arias* (1996) 13 Cal.4th 92, 159 ["we find no misconduct so serious that a curative admonition would have been ineffective"]; *People v. Price* (1991) 1 Cal.4th 324, 460 [rejecting claim that prosecutors committed misconduct during argument on the basis that "any prejudice could have been averted by an admonition"].) Further, as we will explain, we determine that "any arguable misfeasance [was] nonprejudicial. Accordingly, we reject [defendant's] argument that a pattern of pervasive misconduct excused his failure to object. [Citation.]" (*People v. Collins* (2010) 49 Cal.4th 175, 208 (*Collins*).) In sum, we determine that defendant has forfeited his claim.

17

Second, even assuming the claim has not been forfeited and that any of the challenged statements constitute misconduct, we determine that defendant was not prejudiced by the statements.

The prosecutor attempted to link the challenged statements to the evidence in the case. There was evidence at trial that Chauhan owned and worked at the store, that she was a victim of a robbery, that she was scared during the robbery, that she had to go next door to call 911, and that she sold the store several months after the robbery. Indeed, immediately after the prosecutor argued that the jury had to give Chauhan "justice," the prosecutor stated: "How do you do that? Well, the People have to prove that, as the judge just read, five elements of robbery." The prosecutor then proceeded to discuss the elements of robbery and the evidence. The prosecutor's final reference to Chauhan being scared, selling the store, and deserving justice can also be viewed in the context of linking the evidence in the case to the crime.

Further, the jury was instructed that it should not let sympathy influence its decision, that the attorneys' statements were not evidence, and that it should decide the case based only on the evidence presented at trial.[2] "In the absence of evidence to the

---

[2] Before evidence was presented at trial, the jury was instructed, "Do not let bias, sympathy, prejudice, or public opinion influence your decision." (See CALCRIM No. 101.) The jury was also instructed, "You must decide what the facts are in this case. You must use only the evidence that is presented in the courtroom. [¶] Evidence is a sworn testimony of witnesses, the exhibits admitted into evidence, and anything else that I tell you to consider as evidence. [¶] . . . [¶] Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys will discuss the case, but their remarks are not evidence." (See CALCRIM No. 104.)

After the close of evidence, the jury was similarly instructed, "You must decide what the facts are. It is up to all of you, and you alone to decide what happened, based only on the evidence that has been presented to you in this trial. [¶] Do not let bias, sympathy, prejudice or public opinion influence your decision." (See CALCRIM No. 200.) The jury was also again instructed that "[n]othing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence . . . ." (See CALCRIM No. 222.)

18

contrary, we presume the jury understood and followed the court's instructions." (*People v. Williams* (2009) 170 Cal.App.4th 587, 635.)  Moreover, in direct response to the prosecutor's argument about Chauhan selling the store and about her deserving justice, defense counsel reminded the jury about the general substance of these instructions.

Lastly, as explained above, the only issue for the jury was whether defendant was the robber, and that evidence was very strong.  Based on the testimony and exhibits concerning defendant's fingerprint on the Binaca package and the clothing worn by the robber and by defendant in the Costco picture, the evidence established that defendant was the robber.  As a result, we determine that any error was harmless under any standard of review.  (See *Chapman*, *supra*, 386 U.S. at p. 24; *Watson*, *supra*, 46 Cal.2d at p. 836.) Accordingly, "we reject his further claim that the cumulative impact of the alleged misconduct resulted in prejudice and deprived him of a fair trial."  (*Collins*, *supra*, 49 Cal.4th at p. 208.)

Thus, even assuming that trial counsel should have objected to the prosecutor's challenged remarks, there is no reasonable probability that defendant would have obtained a more favorable result.  Defendant thus fails to establish that his trial counsel was ineffective.  (See *Anderson, supra,* 25 Cal.4th at p. 569.)

## C. *Failure to Instruct on Defendant's Out-of-Court Statements*

Chauhan testified that the robber initially asked about glass pipes while touching an item in the store, and that he later talked about cigarettes and Snapple.  She further testified that the robber held a stick while stating he would not hurt her and asking her to open the register.  He then took money from the register.

Defendant contends that the trial court erred by failing to instruct the jury with CALCRIM No. 358, and particularly the portion instructing the jury to consider the out-of-court oral statements attributed to him with caution.  Defendant also contends that the

19

court should have instructed the jury with CALCRIM No. 359 regarding the corpus delicti rule.

The Attorney General concedes that the trial court should have instructed the jury pursuant to CALCRIM No. 358, but contends that defendant was not prejudiced by the court's failure to give the instruction. The Attorney General further contends that the court did not have an obligation to instruct the jury with CALCRIM No. 359.

CALCRIM No. 358, the cautionary instruction, provides: "You have heard evidence that the defendant made [an] oral or written statement[s] (before the trial/while the court was not in session). You must decide whether the defendant made any (such/of these) statement[s], in whole or in part. If you decide that the defendant made such [a] statement[s], consider the statement[s], along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statement[s]. [¶] [Consider with caution any statement made by (the/a) defendant tending to show (his/her) guilt unless the statement was written or otherwise recorded.]"

CALCRIM No. 359, the corpus delicti instruction, provides: "The defendant may not be convicted of any crime based on (his/her) out-of-court statement[s] alone. You may rely on the defendant's out-of-court statements to convict (him/her) only if you first conclude that other evidence shows that the charged crime [or a lesser included offense] was committed. [¶] That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed. [¶] This requirement of other evidence does not apply to proving the identity of the person who committed the crime [and the degree of the crime]. If other evidence shows that the charged crime [or a lesser included offense] was committed, the identity of the person who committed it [and the degree of the crime] may be proved by the defendant's statement[s] alone. [¶] You may not convict the defendant unless the People have proved (his/her) guilt beyond a reasonable doubt."

20

" 'The purpose of the cautionary instruction is to assist the jury in determining if the statement was in fact made.' [Citation.] This purpose would apply to any oral statement of the defendant, whether made before, during, or after the crime." (*People v. Carpenter* (1997) 15 Cal.4th 312, 393 (*Carpenter*), superseded by statute on a different point in *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1106-1107.) "When the evidence warrants, the court must give the cautionary instruction sua sponte. [Citations.]" (*Carpenter*, *supra*, at p. 392.)

Regarding the corpus delicti rule and the associated jury instruction, CALCRIM No. 359, we observe that, to convict a defendant of a crime, the prosecution must prove that a crime actually occurred. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1164.) "[T]he corpus delicti or body of the crime [] cannot be proved by *exclusive* reliance on the defendant's extrajudicial statements. [¶] . . . Whenever such statements form part of the prosecution's case, the jury must be instructed that conviction requires some additional proof the crime occurred." (*Id.* at p. 1165.) The California Supreme Court has "extended the corpus delicti rule to preoffense statements of later intent as well as to postoffense admissions and confessions [citation], but not to a statement that is *part of the crime itself*. [Citation.] A statement to the victim of current intent can itself supply the corpus delicti." (*Carpenter*, *supra*, 15 Cal.4th at p. 394.) In this case, defendant fails to persuasively articulate why any of the statements attributed to him constitute a preoffense statement of later intent or a postoffense admission or confession, and not a statement that was part of the robbery itself. Moreover, we find no prejudice in the trial court's failure to instruct the jury with CALCRIM No. 359 (corpus delicti instruction) or with No. 358 (cautionary instruction).

To determine prejudice, "[w]e apply the normal standard of review for state law error: whether it is reasonably probable the jury would have reached a result more favorable to defendant had the instruction been given. [Citations.] . . . Mere instructional error under state law regarding how the jury should consider evidence does

21

not violate the United States Constitution. [Citation.] Failure to give the cautionary instruction is not one of the ' "very narrow[ ]" ' categories of error that make the trial fundamentally unfair. [Citation.]" (*Carpenter*, *supra*, 15 Cal.4th at p. 393.)

Regarding CALCRIM No. 358, the cautionary instruction, its purpose is " ' "to help the jury to determine whether the statement attributed to the defendant was in fact made, courts examining the prejudice in failing to give the instruction examine the record to see if there was any conflict in the evidence about the exact words used, their meaning, or whether the admissions were repeated accurately. [Citations.]" [Citation.]' [Citation.]" (*People v. Wilson* (2008) 43 Cal.4th 1, 19.) The error is harmless where there was " 'no evidence that the statement was not made, was fabricated, or was inaccurately remembered or reported.' [Citation.]" (*Carpenter*, *supra*, 15 Cal.4th at p. 393.)

In this case, defendant's extrajudicial statements were admitted through Chauhan's uncontradicted testimony. There was no conflicting testimony concerning whether any of the statements attributed to defendant were made, or the context or meaning of defendant's statements. Thus, at issue was whether Chauhan was a credible witness or had fabricated her testimony regarding defendant's statements. The court instructed the jury on evaluating the believability of witnesses pursuant to CALCRIM No. 226, which provided the jury with guidance on how to determine whether to credit any or all of Chauhan's testimony.

Moreover, defendant's statements in this case were not critical to the prosecution's case. At most, defendant's statements that he would not hurt Chauhan and asking her to open the register merely corroborated other evidence – specifically the surveillance video and pictures – that Chauhan was the victim of a robbery. (See *People v. Padilla* (1995) 11 Cal.4th 891, 923 [failure to give cautionary instruction regarding defendant's statements was harmless in light of the "comparatively marginal role defendant's statement must have played in the totality of the record"], overruled on other grounds by

*Hill, supra,* 17 Cal.4th at p. 823, fn. 1.) Indeed, in argument to the jury after the close of evidence, defense counsel acknowledged that the video showed a robbery. Among other statements, defense counsel told the jury, "How can you not agree with that, it's on the video."

This case is thus distinguishable from those cases cited by defendant, where the defendant's oral statements were a crucial part of the prosecution's case. (See *People v. Ford* (1964) 60 Cal.2d 772, 800 [defendant's statements were " 'vitally important evidence' "]; *People v. Bemis* (1949) 33 Cal.2d 395, 401 [defendant's statements were "the only evidence that connected defendant with the crime"]; *People v. Lopez* (1975) 47 Cal.App.3d 8, 14 [defendant's statements had "vital bearing . . . upon the only substantial issue the jury was required to resolve"]; *People v. Henry* (1972) 22 Cal.App.3d 951, 955-956, 958-959 [case turned on whether defendant had admitted possession of jacket containing marijuana]; *Stork v. State* (Alaska 1977) 559 P.2d 99, 103 [evidence of defendant's statements "was a substantial factor leading to his conviction"].)

On this record, applying any standard for harmless error, the fact that the trial court did not instruct the jury with CALCRIM Nos. 358 (cautionary instruction) and 359 (corpus delicti instruction) was not prejudicial.

### D. *CALCRIM No. 372 – Instruction on Flight*

Defendant contends the trial court erred by instructing the jury that it could use evidence of his flight to show a consciousness of guilt, pursuant to CALCRIM No. 372. Defendant argues that there was no evidence of flight, as Chauhan testified only that the robber walked, not ran, away from the store. Defendant argues that he was deprived of his state and federal constitutional rights to due process and a fair trial. Defendant contends his claim is cognizable on appeal and that, to the extent it is not, his trial counsel rendered ineffective assistance of counsel.

The Attorney General contends that defendant forfeited his claim by failing to object to the jury instruction below. The Attorney General further contends that the jury

23

could have viewed defendant's behavior of jumping over the fence as an attempt to avoid detection, thus warranting the instruction on flight. Lastly, the Attorney General argues that any error in giving the instruction was harmless.

### 1. Background

Chauhan testified that the robber took money out of the register and then "[h]e walked out directly out of the store and walked directly across the parking lot. And then jumped over the fence." Chauhan testified that as the robber left the counter, she pressed a panic button and then she "left the store immediately and went next door . . . ." There, Chauhan told a worker that "we need to call 911, and we called 911 from there. As we were doing that, we could still see him crossing the parking lot."

At a jury instruction conference five days later, the trial court and the parties discussed various CALCRIM instructions. When the court raised the issue of CALCRIM No. 372, the flight instruction, defense counsel stated: "He ran from the store and jumped over the fence." The court then turned its attention to a different CALCRIM instruction.

Before the close of evidence, the trial court provided the parties with proposed final jury instructions. The parties had no objection to the proposed instructions.

The trial court ultimately instructed the jury pursuant to CALCRIM No. 372 as follows: "If a defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. [¶] However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

### 2. Analysis

We may review a claim of instructional error that affects the defendant's "substantial rights," with or without a trial objection. (§ 1259; see *People v. Smithey* (1999) 20 Cal.4th 936, 983, fn. 12; *id*. at p. 976, fn. 7.)

24

"Penal Code section 1127c requires that whenever evidence of flight is relied on to show guilt, the court must instruct the jury that while flight is not sufficient to establish guilt, it is a fact which, if proved, the jury may consider." (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1243.) " 'In general, a flight instruction "is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt." ' [Citations.] Evidence that a defendant left the scene is not alone sufficient; instead, the circumstances of departure must suggest 'a purpose to avoid being observed or arrested.' [Citations.]" (*People v. Bonilla* (2007) 41 Cal.4th 313, 328 (*Bonilla*).) However, the law does not require the physical act of running, only a purpose to avoid being detained. (*People v. Abilez* (2007) 41 Cal.4th 472, 522.) Moreover, "[t]o obtain the instruction, the prosecution need not prove the defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury *could* find the defendant fled and permissibly infer a consciousness of guilt from the evidence." (*Bonilla*, *supra*, at p. 328.)

In this case, the parties dispute whether the jury could find that the robber fled based on Chauhan's testimony. We need not resolve this dispute. Even assuming the trial court erred in giving the jury instruction on flight, we determine that any such error was harmless.

First, as we have explained there was strong evidence establishing that defendant was the robber. The robber touched a Binaca package and defendant's fingerprint was ultimately found on that package. Further, defendant's Costco card contained a picture of him appearing to wear the same clothes in the same manner as the robber shown on the surveillance video and stills.

Second, the jury was instructed that some of the instructions may not apply, depending on the jury's findings about the facts of the case. (See CALCRIM No. 200.)

Third, as both parties argued to the jury, the only disputed issue in this case was the *identity* of the robber. Both parties agreed that Chauhan had been robbed and the

25

surveillance video and stills indisputably established that fact. Regarding the sole issue in the case – the identity of the person who had robbed Chauhan – the instruction on flight did not add to or detract from an analysis or determination of the identity of the robber. (See *People v. Mason* (1991) 52 Cal.3d 909, 943 [where identity is an issue, the jury logically must decide that issue before considering the issue of flight and other issues bearing on guilt].) In other words, a determination in this case about whether the robber had fled, and an instruction on the meaning and importance of flight, would not affect the determination of whether defendant was the robber or ultimately whether he was guilty of robbery. Under these circumstances, we determine that any error in giving CALCRIM No. 372, the instruction on flight, was harmless under any standard. (See *Chapman*, *supra*, 386 U.S. at p. 24; *Watson*, *supra*, 46 Cal.2d at p. 836.)

### E. *Jury Instructions Regarding Reasonable Doubt and the Evidence*

Defendant contends that the trial court's definition of reasonable doubt and other instructions regarding the jury's consideration of evidence were flawed and denied him due process, a fair trial, and a right to a jury determination on all issues beyond a reasonable doubt.

The trial court instructed the jury regarding reasonable doubt pursuant to CALCRIM No. 220. Relevant here, the court instructed the jury: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. [¶] Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt, unless I specifically tell you otherwise. [¶] Proof beyond a reasonable doubt, is proof that leaves you with an *abiding conviction* that the charge is true. [¶] The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, *you must impartially compare and consider all the evidence that was received throughout the entire trial*. Unless the evidence proves the defendant guilty

26

beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty." (Italics added.) The trial court also instructed the jury with CALCRIM Nos. 200 (Duties of Judge and Jury), 222 (Evidence), 223 (Direct and Circumstantial Evidence: Defined), and 3550 (Pre-Deliberation Instructions), the combination of which informed the jury that it must decide the facts based only on the evidence presented at trial, which included testimony and exhibits.

Based on these instructions requiring the jury to decide the facts based only on the evidence presented at trial, defendant contends that the instructions erroneously prevented the jury from basing a reasonable doubt on the *absence* of evidence. Defendant also contends that the phrase "abiding conviction" in CALCRIM No. 220 is archaic and erroneously conveys "an insufficient standard of proof akin to clear and convincing evidence and going only to jurors' duration of belief in guilt, not their degree of certainty." Defendant acknowledges that other appellate courts have rejected similar arguments.

The Attorney General contends that defendant has forfeited his constitutional claim because he failed to object to the instructions below. The Attorney General further contends that defendant's "claim has repeatedly been rejected" by other appellate courts.

In reply, defendant contends that this court may reach the merits of his claims and cites section 1259.

" 'Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' [Citation.] But that rule does not apply when . . . the trial court gives an instruction that is an incorrect statement of the law." (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012.) We may review a claim of instructional error that affects the defendant's "substantial rights," with or without a trial objection. (§ 1259; see *People v. Taylor* (2010) 48 Cal.4th 574, 630, fn. 13.)

27

In *People v. Garelick* (2008) 161 Cal.App.4th 1107, this court analyzed and rejected the core of the two arguments raised by defendant in this case. (*Id.* at pp. 1117-1119.) Numerous other courts have rejected one or both of the arguments raised by defendant in this case. (*People v. Zavala* (2008) 168 Cal.App.4th 772, 780-781 [Fifth Dist.]; *People v. Flores* (2007) 153 Cal.App.4th 1088, 1091-1093 [Fifth Dist.]; *People v. Westbrooks* (2007) 151 Cal.App.4th 1500, 1505-1510 [Fourth Dist., Div. 1]; *People v. Zepeda* (2008) 167 Cal.App.4th 25, 28-32 [Third Dist.]; *People v. Guerrero* (2007) 155 Cal.App.4th 1264 [Third Dist.]; *People v. Campos* (2007) 156 Cal.App.4th 1228, 1237-1239 (*Campos*) [Second Dist., Div. 2].)

For example, in *Campos*, the appellate court explained as follows: "Reasonable doubt may arise from the lack of evidence at trial as well as from the evidence presented. [Citation.] The plain language of CALCRIM No. 220 does not instruct otherwise. The only reasonable understanding of the language, '[u]nless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty,' is that a lack of evidence could lead to reasonable doubt. Contrary to defendants' claim, CALCRIM No. 220 did not tell the jury that reasonable doubt must arise from the evidence. The jury was likely 'to understand by this instruction the almost self-evident principle that the determination of defendant's culpability beyond a reasonable doubt . . . must be based on a review of the evidence presented.' [Citations.]" (*Campos*, *supra*, 156 Cal.App.4th at p. 1238.) *Campos* also observed that the United States Supreme Court has approved of the term "abiding conviction" in defining the burden of proof, and that the California Supreme Court and the Courts of Appeal have rejected challenges to that phrase similar to those raised by defendant in this case. (*Id.* at pp. 1238-1239.)

Defendant does not articulate a compelling basis for departing from the reasoning of these cases, and we find the cases persuasive. Accordingly, we determine that the trial

28

court did not err in giving the instructions concerning reasonable doubt and the jury's consideration of evidence.

### F. *Cumulative Error*

Defendant presents a very brief argument that the cumulative effect of the errors he has raised on appeal deprived him of a fair trial. He does not specify how the errors, "though independently harmless," rose "by accretion to the level of reversible and prejudicial error." (*Hill, supra,* 17 Cal.4th at p. 844.) " '[A]n appellate court [is not] required to consider alleged error where the appellant merely complains of it without pertinent argument. [Citation.]' " (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1615.) In any event, we have found that any alleged evidentiary, prosecutorial, or instructional error in this case was not prejudicial. We also find that the cumulative impact of any alleged errors was not prejudicial.

### G. *Abstract of Judgment*

At sentencing in the robbery case, the trial court stayed the three-year punishment for the sole prison prior enhancement (§ 667.5, subd. (a)) that was alleged and found true in this case. The abstract of judgment refers to the three-year prison prior enhancement as "PC667.5(a) x 3" and reflects that it was "S[tayed]." On appeal, defendant contends that the portion of the notation referring to "PC667.5(a) x 3" in the abstract of judgment "wrongly suggests [defendant] served three prior prison terms." Defendant requests correction of the abstract of judgment in this regard.

The Attorney General contends that the notation in the abstract of judgment "simply reflects the three-year term stayed by the court" and that the abstract of judgment is therefore correct.

The abstract of judgment form (Judicial Council Forms, form CR-290 (rev. July 1, 2012)) includes the following instructions regarding enhancements: "List all enhancements horizontally. Enter time imposed, 'S' for stayed, or 'PS' for punishment struck." Because the notation "PC667.5(a) x 3" on the abstract of judgment may be

29

misconstrued as referring to three prison prior enhancements under section 667.5, subdivision (a), we will order the abstract corrected, as only one prison prior enhancement was alleged and found true in this case.

## IV.  DISPOSITION

The judgment is affirmed.  The clerk of the superior court is ordered to correct the abstract of judgment by striking the notation "x 3" regarding the enhancement under Penal Code section 667.5, subdivision (a), and to transmit a copy of the corrected abstract to the Department of Corrections and Rehabilitation.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
MIHARA, J.

_____
GROVER, J.